

**SO ORDERED,**

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: March 12, 2021**

**The Order of the Court is set forth below. The docket reflects the date entered.**

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

| | |
|---|---|
| **HERITAGE REAL ESTATE INVESTMENT, INC.,** | **CASE NO. 14-03603-NPO** |
| **DEBTOR.** | **CHAPTER 7** |

IN RE:

| | |
|---|---|
| **ALABAMA-MISSISSIPPI FARM INC.,** | **CASE NO. 16-01156-NPO** |
| **DEBTOR.** | **CHAPTER 7** |

### MEMORANDUM OPINION AND ORDER: (1) CONSOLIDATING HEARINGS; (2) OVERRULING OBJECTION TO TRUSTEE'S THIRD APPLICATION FOR APPROVAL TO PAY COMPENSATION AND EXPENSES OF WATKINS & EAGER, PLLC & APPROVING TRUSTEE'S THIRD APPLICATION FOR APPROVAL TO PAY COMPENSATION AND EXPENSES OF WATKINS & EAGER, PLLC IN HERITAGE REAL ESTATE INVESTMENT, INC. BANKRUPTCY CASE; (3) OVERRULING OBJECTION TO TRUSTEE'S SIXTH APPLICATION FOR APPROVAL TO PAY COMPENSATION AND EXPENSES OF WATKINS & EAGER, PLLC & APPROVING TRUSTEE'S SIXTH APPLICATION FOR APPROVAL TO PAY COMPENSATION AND REIMBURSEMENT OF NECESSARY EXPENSES OF WATKINS & EAGER, LLC IN ALABAMA -MISSISSIPPI FARM, INC. BANKRUPTCY CASE

This matter came before the Court for a consolidated hearing on February 9, 2021 (the

"Hearing") on the Trustee's Third Application for Approval to Pay Compensation and Expenses

of Watkins & Eager, PLLC (the "Third Fee Application") (Heritage Dkt. 577)[1] filed by Stephen

Smith ("Smith"), the chapter 7 trustee (the "Trustee"),[2] and the Objection to Trustee's Third

Application for Approval to Pay Compensation and Expenses of Watkins & Eager, PLLC (the

"Objection to Third Fee Application") (Heritage Dkt. 584) filed by the Estate of Bruce L. Johnson,[3]

Michael L. King ("King"), and William Harrison ("Harrison" or collectively, the "Harrison

Parties") in the Heritage Bankruptcy Case; and the Trustee's Sixth Application for Approval to

Pay Compensation and Reimbursement of Necessary Expenses of Watkins & Eager, PLLC (the

"Sixth Fee Application" or together with the Third Fee Application, the "Fee Applications") (AL-

MS Farm Dkt. 382) filed by the Trustee and the Objection to Trustee's Sixth Application for

Approval to Pay Compensation and Expenses of Watkins & Eager, PLLC (the "Objection to Sixth

Fee Application" or together with the Objection to Third Fee Application, the "Objections") (AL-

MS Farm Dkt. 386) filed by the Harrison Parties in the AL-MS Farm Bankruptcy Case.  For

efficiency, the Court consolidated the hearings on the Fee Applications and the Objections filed in

the Bankruptcy Cases.  At the Hearing, Eileen N. Shaffer represented the Trustee and Jeff D.

---

[1] Citations to the docket entries in the Heritage Real Estate Investment, Inc. ("Heritage") (No. 14-03603-NPO) bankruptcy case (the "Heritage Bankruptcy Case") are "(Heritage Dkt. ___)"; citations to docket entries in the Alabama-Mississippi Farm, Inc. ("AL-MS Farm") (No. 16-01156-NPO) bankruptcy case (the "AL-MS Farm Bankruptcy Case" or together with the Heritage Bankruptcy Case, the "Bankruptcy Cases") are "(AL-MS Farm Dkt. ___)"; citations to docket entries in other related adversary proceedings are "(Adv. No. ___ Dkt. ___)"; and citations to docket entries in related civil actions in other jurisdictions are "(Civ. No. ___ Dkt. ___)".

[2] On January 21, 2015, the Court converted the Heritage Bankruptcy Case to chapter 7 pursuant to 11 U.S.C. § 1112(b).  (Heritage Dkt. 75).  Thereafter, Smith was appointed as the chapter 7 trustee to administer the Heritage Bankruptcy Case.  (Heritage Dkt. 82).  On June 29, 2016, the Court converted the AL-MS Farm Bankruptcy Case to chapter 7 pursuant to 11 U.S.C. § 1112(b).  (AL-MS Farm Dkt. 57).  Smith also was appointed the chapter 7 trustee to administer the AL-MS Farm Bankruptcy Case.  (AL-MS Farm Dkt. 69).

[3] Bruce L. Johnson ("Johnson") died in 2019.

Rawlings ("Rawlings") represented the Harrison Parties.  In support of the Fee Applications, the Trustee offered three (3) exhibits,[4] his own testimony, and the testimony of attorney Jim F. Spencer, Jr. ("Spencer") into evidence.  In support of the Objections, the Harrison Parties offered the testimony of Harrison and Christopher Warren ("Warren") into evidence.  The Court overruled the Objections from the bench.  This Opinion memorializes and supplements the Court's bench ruling.

## Jurisdiction

The Court has jurisdiction over the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).  Notice of the Hearing was proper under the circumstances.

## Facts

The Court, on multiple occasions, has undertaken the painstaking task of detailing the nearly seven (7)-year history of the Heritage Bankruptcy Case and the nearly five (5)-year history of the AL-MS Farm Bankruptcy Case.  The Fee Applications before the Court cover only approximately six (6) months of this long and complicated history.  Some of the attorneys' fees and expenses incurred by the Trustee relate to matters outside this time period.  Some history outside this time period, therefore, is necessary to provide context to the tasks described in the Fee Applications.[5]

Briefly, Heritage and AL-MS Farm are two (2) of six (6) related entities operating under

---

[4] Citations to the exhibits are "(Tr. Ex. ___; Heritage Dkt. ___)".

[5] The Court refers the reader to the findings of fact in the Memorandum Opinion and Order: (1) Consolidating Hearing; (2) Granting Motion for Default Judgment; (3) Issuing Permanent Injunction; and (4) Awarding Damages (Adv. No. 20-00034-NPO Dkt. 31; Adv. No. 20-00035-NPO Dkt. 31) issued by the Court on February 4, 2021 for a more detailed discussion.

the umbrella of the Greater Christ Temple Apostolic Church (the "Church") in Eutaw, Alabama. Bishop Luke Edwards ("Bishop Edwards") established the Church in 1961. Other Church-related entities include Dynasty Group, Inc. ("Dynasty"), Reach, Inc. ("Reach"), Apostolic Association Assemblies, Inc., and Apostolic Advancement Association ("AAA").

## A.   Heritage Bankruptcy Case Background

Heritage filed a petition for relief under chapter 11 of the U.S. Bankruptcy Code (Heritage Dkt. 1) in this Court on November 6, 2014. After concluding that Heritage did not have current business operations other than the collection of accounts receivable, the Court converted the Heritage Bankruptcy Case to chapter 7 pursuant to 11 U.S.C. § 1112(b). (Heritage Dkt. 75). Thereafter, the Trustee was appointed to administer the Heritage Bankruptcy Case. (Heritage Dkt. 82).

The Trustee has filed during the course of the Heritage Bankruptcy Case, four (4) adversary proceedings in this Court and three (3) state-court actions in Alabama and Mississippi to recover personal and real property of the Heritage bankruptcy estate. *See Smith v. Dynasty Grp., Inc. (In re Heritage Real Estate Inv., Inc.)*, No. 16-00040-NPO (Bankr. S.D. Miss.); *Smith v. Johnson (In re Heritage Real Estate Inv., Inc.),* No. 16-00035-NPO (Bankr. S.D. Miss.); *Smith v. Citizens Tr. Bank (In re Heritage Real Estate Inv., Inc.)*, No. 19-00021-NPO (Bankr. S.D. Miss.); *Smith v. Dynasty Grp., Inc.*, No. CV-14-9000949 (Ala. Cir. Ct.); *Smith v. Brewer*, No. CV-14-900026 (Ala. Cir. Ct.); *Smith v. Apostolic Assoc. Assemblies, Inc.*, No. 16-CV-035(W) (Miss. Cir. Ct.); *Smith v. Edwards (In re Heritage Real Estate Inv., Inc.)*, No. 20-00034-NPO (Bankr. S.D. Miss). The Trustee also has had to defend an adversary proceeding filed by the Harrison Parties in this Court, *Harrison v. Heritage Real Estate Inv., Inc. (In re Heritage Real Estate Inv., Inc.)*, No. 20-00029 (Bankr. S.D. Miss.), and a "Whistleblower" complaint (the "Whistleblower Complaint") filed by

Bishop Edwards individually and purportedly on behalf of Heritage, AL-MS Farm, and AAA in the U.S. District Court for the Northern District of Alabama (the "Alabama District Court") (Civ. No. 7:20-cv-01400-LSC Dkt. 1 (N.D. Ala.).

## B.    AL-MS Farm Bankruptcy Case Background

On March 31, 2016, AL-MS Farm also filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  (AL-MS Farm Dkt. 1).  Months later, the Court converted the AL-MS Farm Bankruptcy Case to chapter 7 (AL-MS Farm Dkt. 57), and the Trustee was appointed to administer the AL-MS Farm bankruptcy estate.  The Trustee serves as the liquidating trustee in both the Heritage Bankruptcy Case and the AL-MS Farm Bankruptcy Case.

The Trustee has faced similar litigation involving the Church-related entities and the Harrison Parties in the AL-MS Farm Bankruptcy Case.  The Trustee has defended the sale of certain real property against untimely pleadings, objections, appeals, and a lawsuit filed by Reach, another Church-related entity.  *See Reach, Inc. v. Ala.-Miss. Farm, Inc.*, No. 3:17-cv-00564-HSO-JCG (S.D. Miss.); *Reach, Inc. v. Smith (In re Ala.-Miss. Farm, Inc.)*, No. 17-00038-NPO (Bankr. S.D. Miss.); *Reach, Inc. v. Smith (In re Ala.-Miss. Farm, Inc.)*, 791 F. App'x 466 (5th Cir. 2019). The Trustee also had to oppose the Whistleblower Complaint in his capacity as Trustee in the AL-MS Farm Bankruptcy Case.  Similar to the adversary proceedings he filed on behalf of Heritage, the Trustee filed an adversary proceeding against Bishop Edwards to enjoin him permanently from pursuing claims on behalf of AL-MS Farm or belonging to the AL-MS Farm bankruptcy estate. *Smith v. Edwards (In re Ala.-Miss. Farm, Inc.)*, No. 20-00035-NPO (Bankr. S.D. Miss.).

## C.    Litigation Related to the Bankruptcy Cases

As stated previously, numerous matters have been adjudicated in the Heritage Bankruptcy Case and the AL-MS Farm Bankruptcy Case.  Although the Fee Applications cover roughly six

(6) months, those six (6) months have included the resolution of matters pending in other forums before the Bankruptcy Cases were filed.  For this reason, the Court discusses the matters included in the Fee Application from their inception to their resolution.

### 1.      Resolution of Prepetition Litigation

Prior to the Bankruptcy Cases, a default judgment in the amount of $6,599,648.00 (the "Alabama Default Judgment") was entered against Heritage, Bishop Edwards, AL-MS Farm, and AAA by Judge Eddie Hardaway ("Judge Hardaway") of the Circuit Court of Greene County, Alabama in favor of the Harrison Parties.  *See Edwards v. Johnson*, 143 So. 3d 691 (Ala. 2013).  An untimely appeal of the Alabama Default Judgment was dismissed by the Alabama Supreme Court.  *Id*.  At that time, Heritage, Bishop Edwards, AL-MS Farm, and AAA were represented by attorney William C. Brewer, III ("Brewer").  In an effort to collect the Alabama Default Judgment, the Harrison Parties filed the Complaint for Fraudulent Transfer of Real Estate and for an Injunction in the Circuit Court of Sumter County, Alabama (the "Alabama Fraudulent Transfer Litigation") to set aside conveyances from Heritage to Dynasty of seventeen (17) parcels of property located in Sumter County, Alabama (the "Sumter Property").  (Heritage Dkt. 268, 490, 493).

### a.      Malpractice Action

On February 28, 2014, Jerry M. Blevins ("Blevins") filed a legal malpractice lawsuit pursuant to the Alabama Legal Services Liability Act, ALA. CODE § 6-5-571 (1975), in the Circuit Court of Sumter County, Alabama, styled *Luke Edwards, Alabama-Mississippi Farm, Inc., Heritage Real Estate Investment Corporation Inc. & Apostolic Advancement Association, Inc. v. William C. Brewer, III*, in Civil Action No. CV 2014-900026 (the "Malpractice Action").  Blevins, on behalf of Heritage AL-MS Farm, Bishop Edwards, and AAA, alleged that Brewer breached the

duty of care in allowing the Alabama Default Judgment to be entered against Heritage, AL-MS Farm, Bishop Edwards, and AAA in favor of the Harrison Parties and failing to file a timely appeal.

While the Malpractice Action was pending, Heritage and AL-MS Farm commenced the Bankruptcy Cases. The Trustee, therefore, was substituted for Heritage and AL-MS Farm as the plaintiff in the Malpractice Action. The Trustee filed applications in the Bankruptcy Cases seeking the Court's permission to employ Blevins as special counsel "for pursuit of a lawsuit previously pending in the Circuit Court of Green[e] County, Alabama." (Heritage Dkt. 88; AL-MS Farm Dkt. 75). In late 2016, Blevins withdrew as counsel for Bishop Edwards and AAA, and Henry L. Penick ("Penick") was substituted as their counsel.

On October 2, 2019, the Trustee and Blevins met with counsel for Brewer's malpractice insurer in Birmingham, Alabama in an attempt to mediate the malpractice claims on behalf of Heritage and AL-MS Farm. Penick also attended the mediation. Brewer purportedly owned a $1 million malpractice insurance policy. Brewer's malpractice insurance policy was described by the parties as a "wasting" policy, meaning that all costs incurred by the insurer in defending the Malpractice Action erode the limits of the policy. The malpractice insurance policy was the only source for recovery on these claims. At that time, the amount available for settlement under the policy was approximately $600,000.00. At the mediation, the parties reached a tentative global settlement of the Malpractice Action in the amount of $500,000.00, with each plaintiff receiving an equal share of $125,000.00 of the settlement proceeds. Penick, however, expressed concerns about the timing of the payment of the settlement proceeds. According to the Trustee, Bishop Edwards and AAA refused to agree to the settlement if the Harrison Parties received any of the proceeds and, for that reason, Penick asked the Trustee to delay seeking approval of the settlement from this Court until the proceeds actually had changed hands. The Trustee disagreed with what

he viewed as an attempt by Bishop Edwards and AAA to avoid paying the Harrison Parties. The mediation ended without a settlement because of this disagreement.

In later negotiations with the insured that did not include Penick, Bishop Edwards, or AAA, the Trustee reached a settlement of the Malpractice Action. The terms of the proposed settlement were set forth as follows:

> [T]he bankruptcy estate of Alabama-Mississippi Farm, Inc. and the bankruptcy estate of Heritage Real Estate Investment, Inc. will each receive $125,000, plus a pro rata share of any settlement paid by Brewer's insurance company to the other plaintiffs, Luke Edwards and Apostolic Advancement Association, Inc., to the extent such payment exceeds $250,000.

(Heritage Dkt. 427; AL-MS Farm Dkt. 349). On May 13, 2020, the Trustee filed motions in the Bankruptcy Cases asking the Court to approve the settlement of the malpractice claim arising out of Brewer's prepetition representation of Heritage and AL-MS Farm. (Heritage Dkt. 427; AL-MS Farm Dkt. 349). The Trustee also asked the Court to approve the payment of attorneys' fees and expenses to Blevins. (*Id.*). In the Heritage Bankruptcy Case, the Harrison Parties, the Church, Dynasty, Reach, Bishop Edwards, Apostolic Association Assemblies, Inc., and AAA filed objections to the settlement agreement. (Heritage Dkt. 439, 440, 456). The Harrison Parties and Reach also filed objections to the Trustee's motion to approve the settlement agreement in the AL-MS Farm Bankruptcy Case. (AL-MS Farm Dkt. 353, 354). The Harrison Parties later withdrew their objections (Heritage Dkt. 463; AL-MS Farm Dkt. 364), and after a hearing was held, the Court entered an order overruling the remaining objections for lack of standing and approving the settlement agreement in the Bankruptcy Cases on September 9, 2020. (Heritage Dkt. 488; AL-MS Farm Dkt. 377).

### b.    Greene County Settlement Notice of Appeal

To enforce the Alabama Default Judgment against Heritage, the Harrison Parties conducted

a sheriff's sale of a 43-acre tract of real property in Greene County, Alabama (the "Greene County Property"). (No. 16-00035-NPO Dkt. 1). The Harrison Parties "credit bid" at the sheriff's sale of the Greene County Property and received a sheriff's deed. (*Id.*). Under Alabama state law, Heritage had one (1) year from the date of the sheriff's sale to redeem the Greene County Property. (*Id.*).

The one (1) year period had not expired when Heritage filed the petition. After Heritage filed the petition and the case was converted, Heritage, without the consent of the Trustee, purportedly executed a quitclaim deed transferring the Greene County Property to the Church. (*Id.*). The same day the parties executed the quitclaim deed, AAA and the Church tendered a certified check in the amount of $96,750.00 (the "Check") to Ira Drayton Pruitt, as the attorney for the Harrison Parties, to redeem the Greene County Property. (*Id.*). The Trustee filed an adversary proceeding against the Harrison Parties, AAA, and the Church seeking a declaratory judgment as to the parties' rights in the Greene County Property and the Check. (*Id.*).

The Bankruptcy Clerk entered entries of default against Harrison, King, AAA, and the Church. (No. 16-00035-NPO Dkt. 13, 14). AAA and the Church asked the Court to set aside the entries of default, and the Court denied the request because they failed to establish either excusable neglect or a meritorious defense. (No. 16-00035-NPO Dkt. 36). AAA and the Church appealed the order denying the request to set aside the entry of default. (No. 16-0035-NPO Dkt. 38; *see Smith v. Apostolic Assoc. Assemblies, Inc. (In re Heritage Real Estate Inv., Inc.)*, Case No. 3:16-cv-00929-CWR-FKB (S.D. Miss.)). The Court then entered default judgments against all of the defendants in the adversary proceeding except Harrison. (No. 16-00035-NPO Dkt. 73, 74). The Court held AAA and the Church had no interest in the Greene County Property or the amounts paid to redeem the Greene County Property. (No. 16-00035-NPO Dkt. 73). The Court similarly

held that Johnson and King had no interest in the amounts paid to redeem the Greene County Property but that Johnson and King were entitled to retain the Greene County Property in partial satisfaction of the Alabama Default Judgment.  Johnson and King, however, had to reduce their claim in the Bankruptcy Cases by $96,750.00.  (No. 16-00035-NPO Dkt. 74).  The Church and AAA appealed the default judgment that the Court entered against them, and the appeal was later dismissed by the U.S. District Court for the Southern District of Mississippi (the "Mississippi District Court") for lack of jurisdiction.  *See Apostolic Assoc. Assemblies, Inc. v. Smith (In re Heritage Real Estate Inv., Inc.)*, Case No. 3:17-cv-00743-DPJ-FKB (S.D. Miss.).

During the pendency of AAA and the Church's appeal, the Trustee and Harrison reached an agreement.  The Trustee agreed to quitclaim any interest he may have in the Greene County Property to the Harrison Parties, and Harrison, in turn, agreed to reduce the claim from the Alabama Default Judgment by $96,750.00 and to allow the Trustee to retain the redemption proceeds of $96,750.00.[6]  (No. 16-00035-NPO Dkt. 125).  AAA and the Church appealed the Court's order approving the settlement agreement between Harrison and the Trustee and the default judgment.  *See Apostolic Assoc. Assemblies, Inc. v. Smith*, No. 3:18-cv-00675-DPJ-FKB (S.D. Miss.).

The Mississippi District Court remanded the case for further proceedings and ordered the parties to contact United States Magistrate Judge F. Keith Ball to oversee a settlement conference. (No. 3:18-cv-00675-DPJ-FKB Dkt. 15).  The Trustee, AAA, the Church, and the Harrison Parties reached an agreement regarding the Greene County Property and the Check that resolved the

---

[6] The Trustee had to file another adversary proceeding (No. 19-00021-NPO Dkt. 1) against Citizens Trust Bank for wrongfully refusing to pay the Check in the sum of $96,750.00.  The parties reached a settlement agreement with regard to that adversary proceeding.  (No. 19-00021-NPO Dkt. 29).

pending adversary proceeding (the "Greene County Settlement"). (Heritage Dkt. 547). Generally, the terms of the settlement were the same terms as were approved by this Court previously. (Heritage Dkt. 547). The parties also agreed to dismiss the adversary proceeding with prejudice. (*Id.*).

On December 18, 2020, Van Turner ("Turner"), an attorney with Bruce Turner PLLC in Tennessee, and Paul A. Robinson ("Robinson"), both purportedly acting on behalf of Heritage, filed the Notice of Appeal to the United States District Court for the Southern District of Mississippi (the "Greene County Settlement Notice of Appeal") (Heritage Dkt. 563) in the Heritage Bankruptcy Case appealing the Court's order approving the settlement. *See Heritage Real Estate Inv., Inc. v. Johnson,* No. 3:20-cv-00810-CWR-FKB (S.D. Miss. Dec. 21, 2020). The Mississippi District Court dismissed the appeal. (No. 3:20-cv-00810-CWR-FKB Dkt. 8).

### c. Alabama Fraudulent Transfer Litigation

When the Heritage Bankruptcy Case was converted to a proceeding under chapter 7, the Trustee also was substituted as the plaintiff in the ongoing Alabama Fraudulent Transfer Litigation in *Smith v. Dynasty Group, Inc.*, No. CV-14-9000949 (Ala. Cir. Ct.). After a jury trial in the Alabama Fraudulent Transfer Litigation, a final judgment was entered on July 10, 2020 in favor of the Trustee, setting aside the conveyances of the Sumter Property to Dynasty and revesting title in Heritage (the "Alabama Final Judgment"). (Heritage Dkt. 268, 490, 493).

### 2. Harrison Parties' Disputed POCs in the Bankruptcy Cases

In the Bankruptcy Cases, the Harrison Parties filed multiple proof of claims (the "Harrison Parties' Disputed POCs") (Heritage Cl. 11-1; Heritage Cl. 13-1; AL-MS Farm Cl. 2-1) all based on the Alabama Default Judgment. The Trustee filed objections to the Harrison Parties' Disputed POCs in the Bankruptcy Cases. (Heritage Dkt. 308, 309; AL-MS Farm Dkt. 192). Harrison filed

the Response of William Harrison to Trustee's Objection to Proof of Claim No. 13 (Heritage Dkt. 312) and Johnson filed the Secured Creditor Response and in Opposition to the Chapter 7 Trustee Motions for Reduction [*sic*] in Claim and Requests Joint Administration and US Marshal Service for Writ of Execution in State Court Proceeding (Heritage Dkt. 313). Because Johnson's response was not signed by his attorney of record, the Court issued an order requiring him to show cause why it should not be stricken from the record. (Heritage Dkt. 314).

The Court consolidated the matters regarding the Disputed POCs in the Bankruptcy Cases and held an evidentiary hearing. On March 29, 2018, the Court issued the Order Dismissing Order to Show Cause; Sustaining Trustee's Objection to Proof of Claim No. 11 Filed by Bruce L. Johnson; Sustaining Trustee's Objection to Proof of Claim No. 13 Filed by William Harrison on Behalf of Johnson, et al; and Sustaining Trustee's Objection to Proof of Claim No. 2 Filed on Behalf of William Harrison, Bruce Johnson and Michael L. King (the "Claim Order") (Heritage Dkt. 342; AL-MS Farm Dkt. 239). In the Claim Order, the Court found that: (1) the Harrison Parties held a general unsecured claim in the amount of $8,047,163.52 in the Heritage Bankruptcy Case; (2) the Harrison Parties held a general unsecured claim in the amount of $10,069,800.11 in the AL-MS Farm Bankruptcy Case; (3) any disbursement must be made to the Harrison Parties in equal share of one-third (1/3) of the total disbursement; and (4) any disbursement of funds from the AL-MS Farm Bankruptcy Case or the Heritage Bankruptcy Case to the Harrison Parties must be applied to the balance of the Alabama Default Judgment to prevent any duplication of recovery on behalf of the Harrison Parties in both the AL-MS Farm Bankruptcy Case and the Heritage Bankruptcy Case. (Heritage Dkt. 342 at 22; AL-MS Farm Dkt. 239 at 22). Harrison then filed a motion seeking the division of the Disputed POCs. (Heritage Dkt. 337). A hearing was held on April 19, 2018, and the Court issued the Order Denying Motion for Division of Claim (Heritage

Dkt. 348).

On May 4, 2020, the Harrison Parties filed a motion (Heritage Dkt. 424) asking the Court for a partial distribution of the proceeds from the sale of assets of the Heritage bankruptcy estate. The Trustee filed the Trustee's Objection to Motion for Partial Distribution (Heritage Dkt. 436). The Court held a hearing on the matter and denied the Harrison Parties' request as premature. (Heritage Dkt. 447).

On August 20, 2020, the Harrison Parties filed the Complaint for Declaratory Judgement, to Determine Extent, Validity and Priority of Liens and for Other Relief (Adv. No. 20-00029-NPO Dkt. 1) asking the Court to issue a declaratory judgment holding that the recording of the Alabama Default Judgment created a "constructive trust" that was "superior to the liens, claims, and encumbrances of Heritage and the Trustee." The Court issued an opinion dismissing the complaint with prejudice on grounds of *res judicata*. (Adv. No. 20-00029-NPO Dkt. 18). The Harrison Parties filed a Notice of Appeal (Adv. No. 20-00029-NPO Dkt. 20) to the U.S. District Court for the Southern District of Mississippi on November 3, 2020. (Civ. No. 3:20-cv-00708-HTW-LGI). The appeal remains pending.

### 3.   Enforcing the Alabama Final Judgment

The Alabama Supreme Court certified its ruling affirming the jury verdict in favor of the Trustee in the Alabama Fraudulent Transfer Litigation on July 28, 2020. (Heritage Dkt. 490 at 9-12). The Alabama Fraudulent Transfer Litigation began before the Heritage Bankruptcy Case was filed, and when the Heritage Bankruptcy Case was converted, the Trustee was substituted as the plaintiff in the action. The Alabama Final Judgment set aside the fourteen (14) quitclaim deeds for seventeen (17) parcels of property in favor of the Trustee.

### a. Motion to Stay

On September 18, 2020, Dynasty filed the Motion to Stay (the "Motion to Stay") (Heritage Dkt. 490) in the Heritage Bankruptcy Case asking the Court to stay the Trustee's execution of the Alabama Final Judgment with respect to the Sumter Property on the ground that it had filed a petition for a writ of certiorari to the U.S. Supreme Court (the "Alleged Certiorari Petition") seeking review of the Alabama Final Judgment. (Heritage Dkt. 490). Counsel for Dynasty, Penick, did not attach a copy of the Alleged Certiorari Petition to the Motion to Stay. The Trustee filed a response to the Motion to Stay (Heritage Dkt. 493) asserting that Penick declined to provide him with a copy of the Alleged Certiorari Petition. To expedite the resolution of the dispute, the Court ordered Penick to produce a copy of the Alleged Certiorari Petition to resolve the uncertainty (Heritage Dkt. 505, 507, 509), but he failed to do so. After a hearing, the Court entered an order denying Dynasty's request. (Heritage Dkt. 528).

### b. Motion to Sell

Once the Alabama Supreme Court certified its decision affirming the Alabama Final Judgment, the Trustee initiated the process of selling the assets of the Heritage bankruptcy estate. (Heritage Dkt. 459, 460, 479). During the pendency of the Motion to Stay, on October 5, 2020, the Trustee filed the Motion for Approval of Auction Contract/Proposal, Sale of Property, Free and Clear of Liens and Auctioneer's Fees and Expenses (the "Motion to Sell") (Heritage Dkt. 497) asking the Court to approve the sale of the Sumter Property. Two objections to the Motion to Sell were filed. Bayview Loan Servicing, LLC ("Bayview") and IB Property Holdings, LLC ("IB") filed a joint Response to Motion for Approval of Auction Contract/Proposal, Sale of Property, Free and Clear of Liens and Auctioneer's Fees and Expenses (Heritage Dkt. 502), and the Harrison Parties filed the Response to Motion for Approval of Auction Contract/Proposal, Sale of Property,

Free and Clear of Liens and Auctioneer's Fees and Expenses (Heritage Dkt. 508). The Trustee, Bayview, IB, and the Harrison Parties reached an agreement, and the Court entered the Agreed Order Approving Motion for Approval of Auction Contract/Proposal, Sale of Property, Free and Clear of Liens, and Auctioneer's Fees and Expenses (the "Sale Order") (Heritage Dkt. 518).

On November 16, 2020, Dynasty filed the Motion to Reconsider (the "Motion to Reconsider Sale Order") (Heritage Dkt. 525) asking the Court to reconsider the Sale Order. In the Motion to Reconsider Sale Order, Dynasty alleged that it "was not allowed to give input in the hearing, or raise its objection predicated on its prior Motion to Stay proceedings until Dynasty's Petition for writ of Certiorari to the United State Supreme Court is adjudicated." (Heritage Dkt. 525 ¶ 5). Dynasty did not file a timely written objection to the Motion to Sell. The Court denied the Motion to Reconsider Sale Order from the bench and issued the Order Denying Motion to Reconsider (Heritage Dkt. 562) finding that Dynasty: (1) did not have an interest in the property at issue, the Sumter Property; (2) failed to file a written objection to the Motion to Sell before the deadline to assert an interest in the disposition of the Sumter Property; (3) misinterpreted the Court's bench ruling on the Motion to Stay; (4) did not reserve its opportunity to participate in the hearing on the Motion to Sell because it did not file an objection; (5) did not properly seek authority to participate via telephone; and (6) waived the right to participate in the settlement negotiations that produced the Sale Order.

### 4. Whistleblower Action and Related Adversary Proceedings

Meanwhile in the Alabama District Court, Bishop Edwards, who is not an attorney, filed the Whistleblower Complaint individually and purportedly on behalf of Heritage, AL-MS Farm, and AAA. The Whistleblower Complaint named as defendants the Harrison Parties; Ira Drayton Pruitt Jr., the lawyer who represented the Harrison Parties in obtaining the Alabama Default

Judgment; Judge Hardaway; and Margo Bryan, Judge Hardaway's court reporter.   The Whistleblower Complaint alleged that the Alabama Default Judgment was part of a "RICO" scheme.

Nine (9) days after filing the Whistleblower Complaint, Bishop Edwards filed an amended Whistleblower Complaint (Civ. No. 7:20-cv-01400-LSC Dkt. 2 (N.D. Ala)).   He then filed a second amended Whistleblower Complaint (Civ. No. 7:20-cv-01400-LSC Dkt. 3 (N.D. Ala.)) and a third amended Whistleblower Complaint (the "Third Amended Whistleblower Complaint") (Civ. No. 7:20-cv-01400-LSC Dkt. 10 (N.D. Ala.)) without first seeking permission from the Alabama District Court or the opposing parties.   The Third Amended Whistleblower Complaint added as defendants the Trustee and Sharon Harris ("Harris"), the Clerk of the Alabama District Court. Numerous motions to dismiss were filed in the Whistleblower Action.   (Civ. No. 7:20-cv-01400-LSC Dkt. 4, 6, 12 (N.D. Ala.)).   The Alabama District Court dismissed the Trustee and Harris with prejudice as a procedural matter because of Bishop Edwards' failure to obtain permission before filing the Third Amended Whistleblower Complaint and dismissed all other defendants with prejudice for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.   FED. R. CIV. P. 12(b)(6).   No appeal was filed.

### a.   Adversary Proceedings

After Bishop Edwards filed the Whistleblower Complaint but before the Alabama District Court dismissed the Whistleblower Complaint, the Trustee initiated two adversary proceedings by filing the Trustee's Complaint for (I) Preliminary and Permanent Injunction and (II) for Contempt Sanctions against Bishop Luke Edwards for Violating the Automatic Stay and (III) for Other Relief

(the "Adversary Complaint") (No. 20-00034-NPO Dkt. 1; No. 20-00035-NPO Dkt. 1).[7]  In the Adversary Complaint, the Trustee sought a preliminary and permanent injunction pursuant to 11 U.S.C. § 105 prohibiting Bishop Edwards from pursuing any claims in any other federal court or in any state court that belonged to the bankruptcy estates of Heritage or AL-MS Farm or that collaterally attacked any final orders of the Court.  (No. 20-00034-NPO Dkt. 1; No. 20-00035-NPO Dkt. 1).  The Trustee, on behalf of Heritage and AL-MS Farm, also sought damages for civil contempt under 11 U.S.C. § 105 against Bishop Edwards for violation of the automatic stay under 11 U.S.C. § 362(a)(3).

Although the Alabama District Court had dismissed the Whistleblower Complaint, the Court issued a preliminary injunction to prevent Bishop Edwards and others acting on his behalf, from pursuing improper claims.  (No. 20-00034-NPO Dkt. 15; No. 20-00035-NPO Dkt. 15).  The Trustee then asked the Court to issue a default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure as made applicable to adversary proceedings by Rule 7055 of the Federal Rules of Bankruptcy Procedure.  (No. 20-00034-NPO Dkt. 11; No. 20-00035-NPO Dkt. 11).  The Court permanently enjoined Bishop Edwards and others acting on his behalf from pursuing claims on behalf of Heritage and AL-MS Farm or belonging to the bankruptcy estates of Heritage and AL-MS Farm.  (No. 20-00034-NPO Dkt. 31; No. 20-00035-NPO Dkt. 31).  The Court also awarded the Trustee actual damages against Bishop Edwards in the amount of $26,451.00 in attorneys' fees and expenses.  (No. 20-00034-NPO Dkt. 32; No. 20-00035-NPO Dkt. 32).

---

[7] The Trustee filed an adversary proceeding related to the Heritage Bankruptcy Case (No. 20-00034-NPO) and an adversary proceeding related to the AL-MS Farm Bankruptcy Case (No. 20-00035-NPO) (together, the "Adversary Proceedings").  The Trustee made identical filings in the Adversary Proceedings, and the Court consolidated the hearings in the Adversary Proceedings. For brevity, the Court refers to the actions together even though separate adversary proceedings were filed.

D.      **Fee Applications**

On January 5, 2021, the Trustee filed the Fee Applications.  The Trustee requests that the Court approve the interim applications for fees and expenses incurred by Watkins & Eager, PLLC ("Watkins & Eager") as special counsel for the Trustee in both the Heritage Bankruptcy Case and the AL-MS Farm Bankruptcy Case.  In total, Watkins & Eager charged $49,176.47 in fees and expenses in the Third Fee Application in the Heritage Bankruptcy Case and $23,375.39 in fees and expenses in the Sixth Fee Application in the AL-MS Farm Bankruptcy Case.

1.      **Third Fee Application — Heritage Bankruptcy Case**

The Third Fee Application asks the Court to approve interim fees in the amount of $47,695.00 and expenses in the amount of $1,481.47 incurred from May 6, 2020 through December 23, 2020 in the Heritage Bankruptcy Case.  (Heritage Dkt. 577).  The Trustee attached to the Third Fee Application the Form 2: Cash Receipts and Disbursements Record ("Heritage Form 2") (Heritage Dkt. 577-1); an invoice from Watkins & Eager (the "Heritage Invoice") (Heritage Dkt. 577-2); and the Trustee's Certification (Heritage Dkt. 577-3).

Heritage Form 2 reflects that the amount of cash on deposit in the Heritage bankruptcy estate account as of January 4, 2021 totals $81,409.02, of which all funds are unencumbered. (Heritage Dkt. 577).  This amount is the difference between total receipts of $490,387.50 and total disbursements of $408,978.56.  To show the prospect of additional receipts, the Trustee offered into evidence at the Hearing three (3) appraisals prepared by William D. Mackey of Bill Mackey Real Estate (the "Appraisals") of different tracts of the Sumter Property.  (Tr. Exs. 1, 2, 3; Heritage Dkt. 595, 596, 597).  The Appraisals provide an appraised value of $212,500.00 for a 177 +/- acre tract in Sumter County, Alabama (Tr. Ex. 1; Heritage Dkt. 595), $522,000.00 for a 564 +/- acre tract in Sumter County, Alabama (Tr. Ex. 2; Heritage Dkt. 596); and $153,000.00 for a 153 +/-

acre tract in Sumter County, Alabama (Tr. Ex. 3; Heritage Dkt. 597) for a total appraised value of all tracts of $887,500.00. The Trustee continues to administer the Heritage bankruptcy estate and liquidate assets as possible.

The Heritage Invoice reflects that from May 6, 2020 to December 23, 2020, the Trustee was charged an hourly billing rate of $300.00 for 143.15 hours of work completed by Spencer, $300.00 for 2.0 hours of work completed by Aaron B. Thomas ("Thomas"), $300.00 for 9.10 hours of work completed by J. Collins Wohner Jr. ("Wohner"), $250.00 for 2.20 hours of work completed by Waverly A. Harkins ("Harkins"), and $100.00 for 8.70 hours of work completed by Nancy A. Patterson ("Patterson"), which totals $47,695.00 for 165.15 hours. (Heritage Dkt. 577-2). The Heritage Invoice includes seven (7) pages of individual time entries that show the lawyer or paralegal who performed the service, the date the services were provided, the hours expended, and a description of the work performed with individual time entries assigned to each task if multiple tasks are listed. (Heritage Dkt. 577-2 at 3-9). For ease of reference in this interim application, the Court has attempted to combine the time entries for each matter based on the descriptions, as follows:[8]

| Hours | Matter |
|-------|--------|
| 16.85 | Malpractice Action |
| 2.70 | Alabama Fraudulent Transfer Litigation |
| 40.70 | Harrison Parties' Disputed POCs |
| 17.70 | Motion to Stay |
| 33.00 | Motion to Sell |

---

[8] In the Court's review of the Heritage Invoice, mathematical errors were discovered in three (3) billing entries that in the aggregate reduced the total hours of work completed by Spencer from 143.15 to 142.95, a difference of 0.20. (Heritage Dkt. 577-2 at 3, July 28, 2020 Entry; Heritage Dkt. 577-2 at 6, Oct. 29, 2020 Entry; Heritage Dkt. 577-2 at 7, Nov. 18, 2020 Entry). The Court will discuss any adjustment to the fees later in the Opinion. This summary of the hours of work completed reflects the correct total number of hours of 164.95.

| 11.40 | Whistleblower Complaint |
| 11.70 | Adversary Proceedings |
| 30.90 | Greene County Settlement Notice of Appeal |

(Heritage Dkt. 577-2).

The Heritage Invoice also includes the expenses incurred by the Trustee in the Heritage Bankruptcy Case from May 15, 2020 through December 16, 2020. (Heritage Dkt. 577-2). The Trustee seeks reimbursement of $364.99 in filing fees, $937.50 in fees paid to Statewide Service of Process, LLC for perfecting personal service on Bishop Edwards in the Adversary Proceedings, $107.85 in Reproduction Charges, $51.00 in postage, and $20.13 for use of a delivery service, which totals $1,481.47 in expenses. (Heritage Dkt. 577-2). The Trustee, therefore, asks the Court to approve a total of $49,176.47 in fees and expenses in the Third Fee Application. (Heritage Dkt. 577-2).

The Objection to Third Fee Application is the fourth fee objection filed by Harrison and the Harrison Parties in the Heritage Case.[9] The Harrison Parties object to the Third Fee Application on the ground that the "'success' ratio is not reasonable." (Heritage Dkt. 584 ¶ 5). The Harrison Parties do not question specific time entries, hours expended, or hourly rates. Indeed, Rawlings conceded at the Hearing that the Harrison Parties did not object to any of the hourly rates or the hours logged for any of the billing entries on the Heritage Invoice. (Hr'g at 11:04:48-11:04:56

---

[9] On July 21, 2015, Harrison, acting *pro se*, filed an objection to the fee application of Craig M. Geno (Heritage Dkt. 168). Because the objection was not signed by Harrison's attorney of record, the Court issued an order requiring Harrison to show cause why the fee objection should not be stricken from the record in the Heritage Bankruptcy Case. (Heritage Dkt. 170). After a hearing on July 30, 2015, counsel of record for Harrison filed a motion withdrawing Harrison's *pro-se* objection. (Heritage Dkt. 177). On June 5, 2020, the Harrison Parties filed the Objection to Trustee's Second Application for Approval to Pay Compensation and Expenses of Watkins & Eager, PLLC (Heritage Dkt. 441) and the Objection to Second Application for Compensation and Reimbursement of Necessary Expenses of Attorney for Trustee (Heritage Dkt. 442). Both objections were withdrawn. (Heritage Dkt. 463, 466).

(Feb. 9, 2021)). Instead, the Harrison Parties argue the total amount of fees and expenses incurred by the Trustee of $535,714.70, which includes fees and expenses of $486,538.23 previously approved by the Court (Heritage Dkt. 218, 464), is disproportionate to the amount of cash receipts of $490,387.58 posted by the Trustee in the Heritage Bankruptcy Case. (Heritage Dkt. 584). They contend that the Trustee is "[s]pending more than recovered." (Heritage Dkt. 584).

### 2. Sixth Fee Application — AL-MS Farm Bankruptcy Case

The Sixth Fee Application asks the Court to approve interim fees in the amount of $21,651.00 and expenses in the amount of $1,724.39 incurred from May 1, 2020 through November 24, 2020 in the AL-MS Farm Bankruptcy Case. (AL-MS Farm Dkt. 382). The Trustee attached to the Sixth Fee Application the Form 2: Cash Receipts and Disbursements Record ("AL-MS Farm Form 2") (AL-MS Farm Dkt. 382-1); an invoice from Watkins & Eager (the "AL-MS Farm Invoice") (AL-MS Farm Dkt. 382-2); and the Trustee's Certification (AL-MS Farm Dkt. 382-3). AL-MS Farm Form 2 shows that the amount of cash on deposit in the AL-MS Farm bankruptcy estate account is $138,665.70 as of January 4, 2021. (AL-MS Farm 382). This amount is the difference between total receipts of $850,974.56 and total disbursements of $712,308.86. The Trustee contends that all funds in the AL-MS Farm bankruptcy estate account are unencumbered. (AL-MS Farm Dkt. 382).

The AL-MS Farm Invoice reflects that from May 1, 2020 through November 24, 2020, the Trustee was charged an hourly billing rate of $300.00 for 70.35 hours of work completed by Spencer and $130.00 for 4.20 hours of work completed by Catherine Payne ("Payne"), which totals $21,651.00. (AL-MS Farm Dkt. 382-2). The AL-MS Farm Invoice includes two (2) pages of individual time entries that show the lawyer or paralegal who performed the services, the date the services were provided, the hours expended, and a description of the work performed with

individual time entries assigned to each task if multiple tasks are listed.  (AL-MS Farm Dkt. 382-2 at 3-4).  For ease of reference in this interim application, the Court has combined the time entries for each matter and provided the following summary:

| Hours | Matter |
|-------|--------|
| 14.05 | Malpractice Action |
| 14.90 | Whistleblower Complaint |
| 45.60 | Adversary Proceedings |

(AL-MS Farm Dkt. 382-2).

The AL-MS Farm Invoice also includes the Trustee's expenses in the AL-MS Farm Bankruptcy Case from January 29, 2020 through December 1, 2020.  (AL-MS Farm Dkt. 382-2). The Trustee seeks reimbursement of $350.00 in filing fees, $937.50 in fees paid to Statewide Service of Process, LLC for perfecting personal service on Bishop Edwards in the Adversary Proceedings, $107.85 in Reproduction Charges, $78.28 in outside printing fees, and $358.61 paid to J & J Court Transcribers, Inc. for a transcript of a hearing on August 14, 2020 which totals $1,724.39 in expenses.  (AL-MS Farm Dkt. 382-2).  The Trustee, therefore, asks the Court to approve a total of $23,375.39 in fees and expenses in the Sixth Fee Application.  (AL-MS Farm Dkt. 382-2).

The Objection to Sixth Fee Application is the first objection to a fee application that the Harrison Parties have filed in the AL-MS Farm Bankruptcy Case.  The Harrison Parties' argument is similar to their argument in opposition to the Third Fee Application in the Heritage Bankruptcy Case.  They question in general the reasonableness of the services rendered by Watkins & Eager and urge the Court to consider the proportionality of the Trustee's total fees and expenses and the total funds they will receive, as the sole claimants in the AL-MS Farm Bankruptcy Case, from the net cash receipts.  (AL-MS Farm Dkt. 386).  From net cash receipts, the Trustee has disbursed

$712,308.86, $218,952.63 of which the Trustee paid to the Harrison Parties as an interim disbursement.  (AL-MS Farm Dkt. 982-1).  The Harrison Parties contend that if the Sixth Fee Application is approved, the most that they will receive of the remaining funds is $115,290.31.  Thus, from total cash receipts of $850,974.56, they will receive at most $334,242.94.  Watkins & Eager has billed the Trustee $142,502.43 to date.

The Harrison Parties do not object to any particular billing entry on the AL-MS Farm Invoice or to the hourly rates.  Indeed, Rawlings at the Hearing conceded that the Harrison Parties did not object to any of the hourly rates or the hours logged for any of the billing entries on the AL-MS Farm Invoice.  (Hr'g at 11:04:48-11:04:56 (Feb. 9, 2021)).

## Discussion

### A.    Application for Interim Compensation

Applications for interim compensation are governed by Rule 2016 of the Federal Rules of Bankruptcy Procedure ("Rule 2016").  FED. R. BANKR. P. 2016.  Rule 2016(a) provides:

> An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.

FED. R. BANKR. P. 2016(a).  While interim fee applications are more common in chapter 11 reorganizations, courts may consider, allow, and provide payment of interim compensation under 11 U.S.C. § 331 in more complex, longer-lasting chapter 7 cases.  3 COLLIER ON BANKRUPTCY ¶ 331.06[1][a] (16th ed. 2021).

The Fee Applications are *interim* fee applications pursuant to 11 U.S.C. § 331.  "Any amounts that were awarded as interim compensation are subject to reconsideration at any time prior to the final award, for any reason."  3 COLLIER ON BANKRUPTCY ¶ 331.04[3] (16th ed. 2021).  "Interim fee awards are not final determinations intended to put a matter to rest.  Rather, they are

interlocutory and reviewable, and are intended only to provide some interim relief from the economic hardships of subsidizing litigation." *Cont'l Ill. Nat'l Bank & Trust Co. v. Charles N. Wooten, Ltd. (In re Evangeline Ref. Co.)*, 890 F.2d 1312, 1322 (5th Cir. 1989).

As the movant, the Trustee bears the burden of "establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, No. 1:06-cv-00433-HSO-RHW, 2014 WL 691500, at *9 (S.D. Miss. Feb. 21, 2014). The Court should exclude from the interim fee application hours that were not "reasonably expended." *Id.* The Trustee also must show that "adequate funds will still be available to pay all presently known and anticipated administrative claims of the same or greater priority and that it is likely that a substantial period of time will pass before administration of the estate is complete." 3 COLLIER ON BANKRUPTCY ¶ 331.06[1][a] (16th ed. 2021). For each objection, however, the Harrison Parties bear the burden of providing as much detailed information as the fee or expense request itself. *See In re Inv'rs Lending Grp.*, No. 11-41963, 2013 WL 3380995, at *4 (Bankr. S.D. Ga. 2013).

In assessing fee applications, the Fifth Circuit has held that courts should apply the lodestar method in concert with the twelve (12) factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See CRG Partners Grp., LLC v. Neary (In re Pilgrim's Pride Corp.)*, 690 F.3d 650, 655-56 (5th Cir. 2012).[10] Under the lodestar method, a court first determines

---

[10] The twelve (12) factors articulated in *Johnson* are as follows: (1) the time and labor required; (2) the novelty and difficult of the questions involved; (3) the skill necessary to properly perform the legal services; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fees charged; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the court or the client; (8) the amount of money involved in the case and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship between the attorney and the client; and (12) fees awarded in similar cases. *Johnson*, 488 F.2d at 717-19.

the compensable hours billed and then calculates a reasonable hourly rate for the compensable services. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). The resulting sums are multiplied to arrive at the lodestar amount. *Pilgrim's Pride Corp.*, 609 F.3d at 655. In *Perdue v. Kenny A. ex rel. Winn* 559 U.S. 542, 551 (2010), the U.S. Supreme Court emphasized the importance of the lodestar approach for calculating the reasonableness of professional fees. These holdings create a framework under which a bankruptcy court determines the proper compensation of professionals employed by the estate.

### 1.    Reasonable Hours Expended

A Court must determine the reasonableness of the hours spent on individual tasks. *Harris v. Allstate Ins. Co.*, No. 07-8789, 2009 WL 86673, at *3 (E.D. La. Jan. 12, 2009). In the Fifth Circuit, the seminal case on the issue of whether professional fees should be considered necessary or beneficial to the administration of the estate is *Barron v. Newburger P.C. v. Tex. Skyline, Ltd. (In re Woerner)*, 783 F.3d 266, 276 (5th Cir. 2015). The *Woerner* Court reviewed the test of 11 U.S.C. § 330 and its legislative history, and joined the majority of other Circuits in adopting a prospective test that looks to the necessity or reasonableness of the professional services *at the time they were rendered* for determining whether services are compensable. *Id.* at 274-77.

The Court begins with a review of the Trustee's duties. When the Heritage Bankruptcy Case and AL-MS Farm Bankruptcy Case were converted and the Trustee was appointed to administer the bankruptcy estates, the Trustee became responsible for upholding certain duties pursuant to 11 U.S.C. § 704. A trustee's duties include: (1) collecting and reducing to money the property of the estate for which the trustee serves; (2) be accountable for all property received; (3) investigate the financial affairs of the debtor; and (4) examine proofs of claims and object to the allowance of any claim that is improper. 11 U.S.C. § 704. The trustee, as representative of the

estate, also has the authority and can exercise his discretion in the decision to prosecute, defend, or settle causes of action belonging to the bankruptcy estate. 11 U.S.C. § 323. There is no evidence presently before the Court that the Trustee has not properly exercised his authority and business judgment in his role as the trustee in both the Heritage Bankruptcy Case and the AL-MS Farm Bankruptcy Case.

As previously shown, the Trustee has had to invest substantial time and expense dealing with attempts by the Harrison Parties, Bishop Edwards, and the Church-related entities to impede the administration of the estates. Mindful that necessary and actual fees and expenses are allowable in situations where they are unavoidably incurred, such as when the Trustee must respond to events not subject to his control, the Court briefly discusses each matter in the Fee Applications below to determine the reasonableness of the hours expended.

### a.   Malpractice Action

The Malpractice Action arose from the pre-petition actions of Heritage, AL-MS Farm, Bishop Edwards, the Church-related entities, and the Harrison Parties. The Trustee replaced Heritage and AL-MS Farm in the Malpractice Action. The Heritage Invoice shows that 16.85 hours were expended in the Heritage Bankruptcy Case on the Malpractice Action during the relevant period, and the AL-MS Farm Invoice reflects that 14.05 hours were expended during the relevant period. The Trustee exercised his judgment in deciding to settle the Malpractice Action on behalf of Heritage and AL-MS Farm. When settlement discussions first began, the amount available for settlement under the policy was approximately $600,000.00. The parties reached a tentative global settlement of the Malpractice Action in the amount of $500,000.00, with each of the four (4) plaintiffs receiving an equal share of $125,000.00 of the settlement proceeds. The Trustee ultimately settled the Malpractice Action in the Heritage Bankruptcy Case and the AL-MS

Farm Bankruptcy Case for $125,000.00 plus a pro rata share of any amount recovered over $250,000.00 by the other parties, respectively. The Court finds that the hours expended in settling the Malpractice Action and obtaining the Court's approval are reasonable especially given the numerous objections filed.

### b. Alabama Fraudulent Transfer Litigation

On March 25, 2019, the jury rendered a verdict revesting title of the Sumter Property in Heritage. On July 28, 2020, the Alabama Supreme Court certified the Alabama Final Judgment. The Heritage Invoice provides that Watkins & Eager spent 2.70 hours on matters related to the Alabama Fraudulent Transfer Action during the applicable time period. The Court finds that the Trustee's expenses in concluding the Alabama Fraudulent Transfer Action are reasonable.

### c. Harrison Parties' Disputed POCs

The Court entered the Claim Order resolving the Harrison Parties' Disputed POCs almost three (3) years ago on March 29, 2018. Since then, the Harrison Parties sought a partial distribution of estate assets, which the Court denied as premature. The Harrison Parties then filed an adversary proceeding against Heritage and the Trustee that this Court dismissed on the basis of *res judicata*. (Adv. No. 20-00029-NPO Dkt. 18). The Harrison Parties' appeal of the dismissal is pending in the Mississippi District Court, and the Trustee must continue to expend time on this matter to protect the interests of the Heritage bankruptcy estate. The Heritage Invoice includes 40.70 hours that Watkins & Eager spent responding to the motion for a partial distribution and defending the adversary proceeding. The Court finds that the hours expended in defending the Claim Order are reasonable.

### d. Motion to Stay

Dynasty filed the Motion to Stay the Alabama Final Judgment after the Trustee started

preparations to sell the Sumter Property revested in Heritage in the Alabama Final Judgment. The Court finds that the Trustee's opposition to the Motion to Stay was necessary for the Trustee to protect the interests of the Heritage bankruptcy estate. The Court, therefore, finds that the 17.70 hours expended opposing the Motion to Stay are reasonable.

### e.   Motion to Sell

The Court also finds that the time expended in preparing for the sale of the Sumter Property and filing the Motion to Sell was necessary to liquidate the assets of the Heritage bankruptcy estate. The Heritage Invoice provides that Watkins & Eager spent 33.00 hours preparing, filing, negotiating, and litigating the Motion to Sell and opposing the related Motion to Reconsider Sale Order. The Motion to Stay and Motion to Reconsider Sale Order constituted another attempt by the Church-related entities to derail the Trustee's administration of the Heritage bankruptcy estate. However misguided these attempts were, the Trustee still had to expend resources to protect the value of the assets in the Heritage bankruptcy estate. The Court, therefore, finds that the 33.00 hours expended on the Motion to Sell and the Motion to Reconsider Sale Order are reasonable.

### f.   Whistleblower Complaint

The Whistleblower Complaint in the Alabama District Court was filed against the Trustee in his official capacity and threatened the administration of the Heritage bankruptcy estate and the AL-MS Farm bankruptcy estate. Watkins & Eager expended a total of 26.30 hours, 11.40 hours which appear on the Heritage Invoice and 14.90 hours, on the AL-MS Farm Invoice, litigating the Whistleblower Complaint. The Trustee's quick actions in responding to Bishop Edward's unauthorized and unfounded claims expedited the dismissal of the Whistleblower Complaint. The Trustee's actions were necessary to defend the Heritage and AL-MS Farm bankruptcy estates. The Court, therefore, finds that the hours expended in the Whistleblower Action are reasonable.

### g.    Adversary Proceedings

Bishop Edwards and others have impeded the administration of the bankruptcy estates, causing the Trustee to expend considerable resources. In an attempt to limit the professional fees and expenses incurred by the Heritage and the AL-MS Farm bankruptcy estates, the Trustee sought a preliminary and permanent injunction against Bishop Edwards and others purportedly acting on his behalf from pursuing claims either on behalf of or belonging to the Heritage and the AL-MS Farm bankruptcy estates. The Heritage Invoice provides that 11.70 hours were expended on the Adversary Proceedings in the Heritage Bankruptcy Case, and the AL-MS Farm Invoice provides that the Watkins & Eager spent 45.60 hours on the Adversary Proceedings. The Trustee mitigated the expense associated with the Adversary Proceedings by employing Watkins & Eager to perform similar work in both Bankruptcy Cases. The Court awarded as damages against Bishop Edwards the attorneys' fees and expenses associated with the Adversary Proceedings. It is unknown at this juncture if this award will reduce the Trustee's final fees and expenses, but it demonstrates the Trustee's mitigation efforts. The Court finds that the Adversary Proceedings were a reasonable attempt by the Trustee to stop the litigation tactics of Bishop Edwards and others purportedly acting on his behalf, and the permanent injunction has the potential to eliminate or reduce fees and expenses in defending future improper actions. The Court, therefore, finds that the total hours expended in obtaining a preliminary and permanent injunction in the Adversary Proceedings are reasonable.

### h.    Greene County Settlement Notice of Appeal

Although the dispute regarding the Greene County Property began prepetition, the actions of the Church and AAA delayed the final adjudication of the matter. The Greene County Settlement generally resolved the dispute consistent with the result reached by the Court and the

prior settlement entered into with Harrison.  The Greene County Settlement Notice of Appeal purportedly filed on behalf of Heritage by Turner and Robinson required the Trustee to expend resources to obtain the dismissal of the appeal.  The Heritage Invoice provides that Watkins & Eager expended 30.90 hours on the Greene County Settlement and the Greene County Settlement Notice of Appeal.  The Court finds that these hours are reasonable.

### 2. Prevailing Hourly Rate

It is well settled that "reasonable" hourly rates "are to be calculated according to the prevailing market rate in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The Fifth Circuit has interpreted "relevant community" to mean that courts must consider the customary fee for similar work "in the community." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011).  In determining the reasonableness of hourly rates, a court relies on evidence submitted by the applicant as to the rates it customarily charges and the court's own knowledge of comparable rates charged by lawyers. *Id.* (citing *Blum*, 465 U.S. at 895).  Having found that the hours expended on the Heritage Invoice and AL-MS Farm Invoice, respectively, are reasonable, the Court now turns to the prevailing market rate in the relevant community.

### a. Heritage Invoice

The Heritage Invoice reflects that from May 6, 2020 to December 23, 2020, the Trustee was charged an hourly billing rate of $300.00 for 143.15 hours of work completed by Spencer, $300.00 for 2.0 hours of work completed by Thomas, $300.00 for 9.10 house of work completed by Wohner, $250.00 for 2.20 hours of work completed by Harkins, and $100.00 for 8.70 hours of work completed by Patterson, which totals $47,695.00.  (Heritage Dkt. 577-2).

In this district, courts have approved hourly billing rates up to $400.00. *Rigsby*, 2014 WL 691500, at *14.  The Mississippi Bar Association's online Lawyer Directory reflects that Spencer

was admitted to practice law in Mississippi in 1987, Wohner was admitted to practice law in Mississippi in 1988, Harkins was admitted to practice law in Mississippi in 2006, and Patterson was admitted to practice law in Mississippi in 2011. Miss. Bar Lawyer Directory, https://www.msbar.org/lawyer-directory/ (last visited Mar. 11, 2021). The Court finds that $300.00, $300.00, $250.00, and $100.00, respectively, are reasonable hourly rates for attorneys of similar skill, expertise, and reputation. The Alabama State Bar online Lawyer Directory reflects that Thomas was admitted to practice law in Alabama in 2000. Ala. Bar Lawyer Directory, https://www.alabar.org/find-a-member/ (last visited Mar. 11, 2021). The Court also finds that $300.00 is a reasonable hourly rate for an attorney of similar skill, expertise, and reputation. Therefore, the Court finds that the hourly billing rates for attorneys in the Third Fee Application are reasonable under the market rate standard articulated by the U.S. Supreme Court and the Fifth Circuit.

### b. AL-MS Farm Invoice

The Sixth Fee Application in the AL-MS Farm Bankruptcy Case reflects that from May 1, 2020 to November 24, 2020, the Trustee was charged an hourly billing rate of $300.00 for 70.35 hours of work completed by Spencer and $130.00 for 4.20 hours of work completed by Payne, which totals $21,651.00. (AL-MS Farm Dkt. 382-2).

The Court previously determined that $300.00 is a reasonable hourly rate for attorneys of similar skill, expertise, and reputation as Spencer. The Fifth Circuit has held that paralegal work can be recovered as attorneys' fees "if the work is legal in nature, rather than clerical." *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001). This Court has previously held that an hourly rate of $125.00 for paralegal work was reasonable. *In re Cmty. Home Fin. Servs., Inc.*, No. 1201703-EE 2015 WL 6511183, at *23 (Bankr. S.D. Miss. Oct. 27, 2015). The Court finds that

over five (5) years later, an hourly rate increased to $130.00 for paralegal work remains reasonable. Therefore, the Court finds that the respective hourly billing rates are reasonable.

### 3.    Adjustments

Under the lodestar method, a court first determines the compensable hours billed and then calculates a reasonable hourly rate for the compensable services. *Black*, 732 F.3d at 502. The resulting sums are multiplied to arrive at the lodestar amount. *Pilgrim's Pride Corp.*, 609 F.3d at 655. These holdings create a framework under which a bankruptcy court determines the proper compensation of professionals employed by the estate. Upon review of the Heritage Invoice, the Court uncovered three (3) billing entries for work performed by Spencer that require adjustment. The Heritage Invoice provides the following entries:

| Lawyer or Paralegal | Date | Hours | Description |
|---|---|---|---|
| JFS | 07/28/20 | 1.00 | Review mandate from Alabama Supreme Court (.3); email to Stephen Smith re: same (.2); review email from surveyor (.2); call to Shafer (.2). |
| JFS | 10/29/20 | 1.00 | Review issues re: sale of property and hearing on same (.5); finalize settlement motion in AP 16-00035 (.3); email to and from Henry Penick re: same (.3). |
| JFS | 11/18/20 | 2.30 | Review order on preliminary injunction (.5); review issue re: default judgment (.2); review service of injunction (.2); call from Trustee (.10); designate record in 20-0029 (.5); review show cause notices (.3); review order denying motion to stay (.3). |

(Heritage Dkt. 577-2). These itemizations revealed minor computation errors. The July 28, 2020 entry reflects 0.90 hours (0.30 + 0.20 + 0.20 + 0.20) in the description but total hours of 1.00, which is 0.10 more than the hours in the description. The October 29, 2020 entry shows 1.10 hours (0.50 + 0.30 + 0.30) in the description but total hours of 1.00, which is 0.10 less than the hours in the description. Finally, the November 18, 2020 entry indicates 2.10 hours (0.50 + 0.20 + 0.20 +

0.10 + 0.50 + 0.30 + 0.30) in the description but total hours of 2.30, which is 0.20 more than the hours in the description. The three (3) errors are all entries billed by Spencer at an hourly rate of $300.00. The errors require a downward adjustment in hours expended by Spencer of 0.20. The Court, therefore, finds that the hours expended by Spencer on the Heritage Invoice should be reduced from 143.15 to 142.95. The adjustment results in a reduction of total fees from $47,695.00 to $47,635.00. The Court does not find cause to adjust the total fees set forth by the AL-MS Farm Invoice in the amount of $21,651.00.

The Fifth Circuit has held that the lodestar method should be used in concert with the *Johnson* factors. As to the final step in determining the reasonableness of fees, the Court recognizes that it has the discretion to modify the "lodestar" fee based upon the twelve *Johnson* factors. *See Pilgrim's Pride Corp.*, 690 F.3d at 652 (holding that United States Supreme Court's decision in *Perdue* did not overrule framework applying *Johnson* factors). The Court finds that further adjustment to the "lodestar" fee is unnecessary in light of the strong presumption that the "lodestar" method provides a reasonable fee and that the Fee Applications are interim fee applications.

**B.     Expenses**

Next, the Court turns to the reasonableness of the expenses detailed in the Heritage Invoice and the AL-MS Farm Invoice.

**1.     Heritage Invoice**

The Heritage Invoice includes the Trustee's expenses in the Heritage Bankruptcy Case from May 15, 2020 through December 16, 2020. The Trustee seeks reimbursement of $364.99 in filing fees, $937.50 in fees paid to Statewide Service of Process, LLC for perfecting personal service on Bishop Edwards in the Adversary Proceedings, $107.85 in Reproduction Charges,

$51.00 in postage, and $20.13 for use of a delivery service which totals $1,481.47 in expenses. The Court finds that the expenses provided on the Heritage Invoice are reasonable and related to the administration of the Heritage Bankruptcy Case. The Court, therefore, finds that the interim expenses in the Third Fee Application of $1,481.46 are reasonable.

### 2.    AL-MS Farm Invoice

The AL-MS Farm Invoice includes the Trustee's expenses in the AL-MS Farm Bankruptcy Case from January 29, 2020 through December 1, 2020. In the AL-MS Farm Invoice, the Trustee seeks reimbursement of $350.00 in filing fees, $937.50 in fees paid to Statewide Service of Process, LLC for perfecting personal service on Bishop Edwards in the Adversary Proceedings, $107.85 in Reproduction Charges, $78.28 in outside printing fees, and $358.61 paid to J & J Court Transcribers, Inc. for a transcript of a hearing on August 14, 2020 which totals $1,724.39 in expenses. The Court finds that the expenses detailed in the AL-MS Farm Invoice are reasonable and related to the administration of the AL-MS Farm Bankruptcy Case during the relevant period. The Court, therefore, finds that the *interim* expenses in the Sixth Fee Application of $1,724.39 are reasonable. Having found that the Trustee has met his burden, the Court now considers the Objections.

### C.    Objections

The Court previously has adopted procedures in fee disputes that required an objecting party to provide detailed objections to specific time entries on interim fee applications. *See Cmty. Home Fin. Servs., Inc.*, 2017 WL 1753224, at *14. Specifically, the Court has required objections to include the precise amount of interim fees and expenses to which the party objects and the precise amount of interim fees and expenses to which it does not object. *Id.* The Harrison Parties, however, did not follow these procedures. They argue that the attorneys' fees are unreasonable

because they are disproportionate to the cash receipts, but they do not provide a specific amount by which the fees should be reduced. The Court, at this juncture, cannot evaluate the proportionality of the attorney's fees and expenses to the "results obtained" because the Trustee has not completed the administration of the bankruptcy estates. *Johnson*, 488 F.2d at 717-19. The amount of recovery is not known with reasonable certainty at this time. For example, the Appraisals introduced into evidence by the Trustee suggest that the cash receipts in the Heritage Bankruptcy Case will increase from $490,387.50 to $1,377,887.50 in the near future upon the sale of the Sumter Property. The Court, therefore, finds that the Harrison Parties' proportionality argument is premature and that the Objections should be overruled.

At the Hearing, Harrison and Warren, who is Johnson's son and the administrator of Johnson's estate, testified about their general dissatisfaction with the Trustee's administration of the Heritage bankruptcy estate and the AL-MS Farm bankruptcy estate. They claim that they "would be better off exercising their own private rights of recovery." (AL-MS Farm Dkt. 584). Whatever the basis for their frustration, the Trustee has not created this alleged disparity. The Trustee has had to invest substantial time and labor responding to failed motions, objections, and litigation that has disrupted the administration of the Bankruptcy Cases. Bishop Edwards and Church-related entities have been responsible for many of these disruptions, but the Harrison Parties also have played a significant role.[11] The Harrison Parties do not serve their own interests well by repeatedly challenging the Trustee's business judgment and his motivations without success. Such litigation has depleted the amount of recovery for creditors like themselves.

## C.   Interim Compensation Procedures

Moving forward, parties will have twenty-one (21) days after service of an interim fee

---

[11] *See supra* note 9.

application to file an objection.  In any objection, the party must specify the precise amount of interim fees and expenses to which it objects and the precise amount of interim fees and expenses to which it does not object.  Specifically, the objecting party must identify the objection to the hours logged, the hourly rate, and/or the description of services.  Any exhibits that either party proposes to introduce into evidence at any fee hearing must be provided to opposing counsel and filed in the respective bankruptcy case at least two (2) weeks before the date of the fee hearing. All fees and expenses paid under these compensation procedures are subject to approval of the Court after a hearing is held and an order issued on any interim fee application.  These compensation procedures will not authorize payment of such fees and expenses to the extent that such authorization does not exist under the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or other applicable law.

**Conclusion**

The prepetition dispute between the Harrison Parties on one side, and the Church-related entities and Bishop Edwards on the other side, has been brought into the Bankruptcy Cases.  The actions of both sides have generated substantial attorneys' fees and expenses for the estates beyond the Trustee's control.  The Objections filed by the Harrison Parties are the latest example.

Interim fee applications are not final determinations intended to put a matter to rest but are routine matters.  If an objecting party does not dispute an hourly rate, hours expended on a particular task, or the description of the task, then the Court may be faced with nothing more than a simple computation.  Here, that computation ultimately did require a minor adjustment but not to the extent that warranted the filing of the Objections or a full hearing.

Interim fee applications, moreover, do not provide the parties with another opportunity to litigate final orders of this Court. The Bankruptcy Code provides the parties with appropriate

procedures to challenge the proceedings in the Bankruptcy Cases. When parties disagree with the Court's findings of fact or conclusions of law, it is their responsibility to take the necessary action at the appropriate time. The Court will not continue to waste its limited resources on objections to the Trustee's administration of the Heritage and AL-MS Farm bankruptcy estates disguised as an objection to an interim fee application under 11 U.S.C. § 331 and Rule 2016.

The Court has outlined the procedure for raising objections to interim fee applications moving forward. The Court, therefore, overrules the Objections. The Court grants the Trustee's request for the payment of interim attorneys' fees and expenses in the Third Fee Application as adjusted in the Heritage Bankruptcy Case and the Trustee's request for payment of interim attorneys' fees and expenses in the Sixth Fee Application in the AL-MS Farm Bankruptcy Case.

IT IS, THEREFORE, ORDERED that the hearings on the Fee Applications and Objections in the Bankruptcy Cases are hereby consolidated.

IT IS FURTHER ORDERED that the Objection to Third Fee Application is hereby overruled.

IT IS FURTHER ORDERED that the Third Fee Application is hereby approved as adjusted. Watkins & Eager is hereby awarded interim fees and expenses in the aggregate amount of $49,116.47, which consists of adjusted hourly fees of $47,635.00 and expenses of $1,481.47.

IT IS FURTHER ORDERED that the Objection to Sixth Fee Application is hereby overruled.

IT IS FURTHER ORDERED that the Sixth Fee Application is hereby approved. Watkins & Eager is hereby awarded interim fees and expenses in the aggregate amount of $23,375.39, which consists of hourly fees of $21,651.00 and expenses of $1,724.39.

IT IS FURTHER ORDERED that the following interim compensation procedures

consistent with this Opinion shall apply:

1.    Parties will have twenty-one (21) days after service of an interim fee application to file an objection. In any objection, the party must specify the precise amount of interim fees and expenses to which it objects and the precise amount of interim fees and expenses to which it does not object.

2.    Upon expiration of the objection deadline, the Trustee is authorized to pay (100%) of the fees and expenses that are not subject to any objection.

3.    Any exhibits that either party proposes to introduce into evidence at any fee hearing, must be provided to opposing counsel and filed in the respective bankruptcy case using the electronic case filing event, "Bankruptcy > Other > Exhibit (Document Restricted)" at least two (2) weeks before the date of the fee hearing.

4.    All fees and expenses paid under these compensation procedures are subject to approval of the Court after a hearing is held and an order issued on any interim fee application.

## END OF OPINION ##